*J*

---

ANDREW MACKLEM v. ELBRIDGE F. BACON, RECEIVER.

*Mistake of law—Mutuality of error—Liability of insured.*

1. Mutuality in a mistake of law does not aid the equities that arise from it, for equity will never interfere unless there is something that makes it inequitable to enforce the obligation over which the mistake has occurred.

2. A mistake of law is something done or suffered under a misapprehension of legal rights, and in reliance upon what one believes them to be; it must be the necessary result of ignorance, and without negligence in its origin; and diligence in seeking relief upon the discovery of the mistake is as necessary as in cases of fraud.

3. The General Insurance Law (How. Stat., ch. 132) authorizes the incorporators of a mutual insurance company to prescribe in their charter the liability of members to assessments. But it also provides that if the company becomes insolvent, a receiver may assess them for enough to meet all liabilities. A member of an insolvent company filed a bill to restrain such an assessment, averring it to be the general understanding, as well as his own, that no one was to be assessed beyond the amount which he had agreed to pay by his premium note. This fact was admitted by demurrer. *Held*, that as a general agreement to that effect would not be illegal, and as individual members could waive the provision made by the statute for their protection, it would be inequitable for any member of a mutual company to insist on its enforcement after all had become insured with the understanding that their liability was limited to their premium notes.

Appeal from Sanilac. (Wixson, J.) April 15.—June 17.

INJUNCTION bill. Complainant appeals. Reversed.

*Beach & Macklem* and *C. I. Walker* for appellant. Equity will relieve one who has made a contract under a material mistake of fact: 1 Story's Eq. §§ 140, 141; Kerr on Mistake 405–6; even if caused by another's misleading statements: *Converse v. Blumrich* 14 Mich. 110; it is said that a bare mistake of law furnishes no ground for relief: 1 Story's Eq. §§ 137–8; *Jacobs v. Morange* 47 N. Y. 57; but this is disputed: see *Stone v. Godfrey* 5 DeG. M. & G. 89; *Rogers v. Ingham* L. R. 3 Ch. Div. 357; *Earl of Beauchamp v. Winn* L. R. 6 E. & I. H. L. Cas. 234; *Hunt v. Rousmaniere* 8 Wh. 174: 1 Pet. 1; *Bank of U. S. v. Daniel* 12 Pet. 55; *Upton v. Tribilcock* 91 U. S. 45; *Snell v. Ins. Co.* 98 U S. 90; *Fish v. Cleland* 33 Ill. 383; *Stewart v. Stewart* 6 Cl. & F. 964; *Champlin v. Laytin* 6 Paige 195: 18 Wend. 412; *Dupre v. Thompson* 4 Barb. 282; and does not apply when the mistake is not as to a general rule of law but as to the law of a private corporation, in which cases ignorance may be presumed: *King v. Doolittle* 1 Head 79; *Lammot v. Bowly* 6 Har. & J. 525; *Cumberland Coal &c. Ins. Co. v. Sherman* 20 Md. 152; *Cook v. Mfg. Co.* 1 Sneed 715; *Cooper v. Phibbs* L. R. 2 Eng. & Ir. H. L. Cas. 149; a distinction is made between mere ignorance of the law, and a clear mistake of

the law, where the latter is distinctly proven, and in which class of cases relief may be granted: *Executors v. Mazyck* 1 Hill Ch. 250 ; *State v. Paup* 13 Ark. 136 ; *Hall v. Reed* 2 Barb. Ch. 503, 505 ; the following cases are exceptions to the general rule: *Clifton v. Cockburn* 3 Myl. & K. 99 : *Jordan v. Stevens* 51 Me. 78 ; it has been said that a mistake as to the legal effect of a paper is not a ground for relief ; this is dictum in *Martin v. Hamlin* 18 Mich. 356 ; but the overwhelming weight of authority is the other way ; and this, whether the mistake be a mutual one or only of the party asking relief : *Larkins v. Biddle* 21 Ala. 252 ; *Sparks v. Pittman* 51 Miss. 520 ; *Woodbury S. B. Ass'n v. C. O. Ins. Co.* 31 Conn. 517 ; *Canedy v. Marcy* 13 Gray 373 ; *Lucas v. Lucas* 30 Ga. 202 ; *Clayton v. Bussey* 30 Ga. 946 ; but it is clear that where complainant has been misled as to the law by the other party to the contract, or his agent, or has been induced thereby, although without fraud, to enter into a contract, equity will relieve : 2 Wharton's Ev. § 1029 ; *Tabor v. Mich. L. I. Co.* 44 Mich. 330 ; *Broughton v. Hutt* 3 D. & J. 501 ; *Green v. Morris C. & R. Co.* 1 Beasley 165 ; *Sparks v. White* 7 Humph. 90 ; *Lanier v. Hill* 25 Ala. 554, 558 ; *Blakeman v. Blakeman* 39 Conn. 320 ; *Harris v. C. Ins. Co.* 18 Ohio 116 ; *Drew v. Clarke* Cooke 380 ; *Evants v. Admr* 11 Ohio 480.

*Jno. Atkinson* and *Isaac Marston* for appellee. A misapprehension or misunderstanding of the law will not vitiate a contract where there is no misunderstanding of the facts : *Fish v. Cleland* 33 Ill. 243 ; *Starr v. Bennett* 5 Hill 303 ; *Lewis v. Jones* 4 B. & C. 506 ; *Rashdall v. Ford* L. R. 2 Eq. 750 ; that a stockholder may relieve himself from his liability by proof that he was misinformed as to the effect of his contract when he made it, would be a disastrous doctrine : *Martin v. Hamlin* 18 Mich. 354 ; see also *Briggs v. Cornwell* 9 Daly N. Y. 436 ; 1 Redf. Railways § 51.

CHAMPLIN, J. The Mutual Fire Insurance Company of Sanilac, Huron and Tuscola counties, was organized under the laws of Michigan. 1 How. Stat. ch. 132. Section 5 of that act required the corporators to declare in the charter adopted by them the mode and manner in which the corporate powers conferred by that chapter were to be exercised, and they were authorized by that section to prescribe in their charter the liabilities of the members to be assessed

towards defraying the losses and expenses of the company, and the mode and manner of collecting such assessments. In case the corporation becomes insolvent, or fails to pay its losses as required by the act, it is made the duty of the Commissioner of Insurance to proceed in the circuit court of the proper county, and obtain the appointment of a receiver for the company; and section 17 makes it the duty of the receiver to " at once proceed to assess upon all of the members and persons insured in such company such sums of money as will in the aggregate be sufficient to pay all the losses and liabilities of said company, together with the services and expenses of such receiver, according and in proportion to the amount of their insurance or interest in such company;" and if the amount realized by such receiver be insufficient to pay the losses and liabilities therein, and expenses, he may make a second and other assessments, as may be necessary.

It was held in *Russell v. Berry* 51 Mich. 287, that the authority to prescribe the liabilities of the members to be assessed related to the ordinary exercise of their corporate powers by the company, while it was in a solvent condition and carrying on its business in the ordinary way; but that the statute prescribed its own rule for assessments after the corporation had passed into the hands of a receiver, and that this rule could not be changed or limited by the charter or by-laws of the corporation.

On the 6th of July, 1877, complainant applied to the company to become insured by it to the amount of $1700 for three years. The insurance was effected through a written application made upon the company's blanks, and for which insurance he gave to the company his premium note, a copy of which is as follows:

" For value received, I agree to pay the Mutual Insurance Company, in such sums and at such times as they may require to pay losses and expenses, not to exceed the sum of twenty-five and fifty one-hundredth dollars, payable at the company's office.    ANDREW MACKLEM, applicant."

At the same time he paid the company seven dollars and

ten cents down upon the note. A policy was issued to complainant, which was renewed on the 6th day of July, 1880, for three years longer. Soon after this came the extensive fire which devastated Huron county, consuming many of the risks taken by the company, and the result was it was unable to pay the losses incurred by assessments on its premium notes. At the instance of the Insurance Commissioner defendant was appointed receiver under the law, and an assessment made under section 17 of the act. The amount assessed against complainant on his $1700 was $144.50, and a suit at law has been brought therefor. The complainant then filed his bill to enjoin that suit upon the ground that the contract of insurance and the liability growing out of it were entered into under a serious mistake both of law and of fact, and such mistake as entitles complainant to a perpetual injunction against the receiver, restraining him from making any assessments or taking any proceedings to recover any assessment in excess of the premium note, and from prosecuting the suit commenced.

The bill avers that Benjamin H. Mudge was the general agent of the insurance company, and also soliciting agent, and was expressly authorized to make the representation which he did make to the complainant. No fraud is averred or claimed. These statements I quote at length from the bill :

" Your orator further says that it was explicitly represented to him before and at the time of making such application, as part of the inducement to take such insurance, by Benjamin H. Mudge, the general soliciting agent of said company, upon questions directly put to said agent by your orator for that purpose, that the extent of your orator's liability in any case could not exceed the amount of said premium note, and, as the general agent then and there remarked, that if all the buildings insured in said company except your orator's be destroyed by fire, still your orator would be liable only to the amount of his said premium note ; which statement your orator has good reason to believe said general agent, Benjamin H. Mudge, will not deny.

Your orator has good reason to believe, and does so believe and so states the fact, that the persons insured in said com-

pany, including those that suffered losses, expected that they were liable only to the amount of their premium notes, and in no case could it exceed the amount of said premium notes, and so believed they were liable only to said amount until the assessment made by said receiver.

Your orator further says that the conversation had with the said general agent at the time of taking said insurance led him to believe that if your orator should be among those that suffered losses which should exceed the amount of all the premium notes, then your orator would receive only such proportion of his loss as said premium notes would bear to such loss, and such was the belief of those persons that were insured in said company who suffered losses.

That your orator expressly stated to the said general agent, before and at the time of making such application, that if there was any probability of liability beyond the said premium note he wanted nothing to do with it, and such insurance was negotiated and taken by said general agent with the express understanding that your orator's liability could not in any case exceed the amount of his premium note; that the general agent then and there stated to your orator that such was the law under which said company was organized, and such was the charter and by-laws of said company; that your orator was induced by such assurances and expressions made by said general agent to make application for such insurance; and the wording of the premium note so signed by your orator led him to believe that such representations were true and correct; that after receiving said policy and reading the by-laws carefully over, especially by-law No. 14, and after examining the charter, which is printed on another policy of insurance in said company, which is held by your orator, further led him to believe that such representations were true and correct.

And your orator further shows that each and every person insured in said company so understood his rights and liabilities by reason of the representations of the managers and general agent of said company, and there was nothing in the statute laws under which said company was organized that was contrary to the by-laws and charter of said company; and the Attorney General and the Commissioner of Insurance of this State certified that the charter of said company was in accordance with the statute under which said company was organized, and they, as well as your orator, believed that said charter conformed to the law of this State, and there was nothing in said charter, as your orator could per-

ceive, would make him liable beyond the premium note so
signed by him.   Nor was there any law on mutual insurance
companies, as expounded by the courts of this State up to or
about the time of making such assessment, that gave your
orator any knowledge of further or greater liability or
indemnity than shown by the premium note.

And your orator further says that he is, always was, and
still is, willing to pay the full amount of said premium note,
but that he refuses to pay anything in excess thereof, for the
reason that it was contrary to the contract and agreement
made and entered into with said general agent, and contrary
to the representations made by said agent, and for other
reasons heretofore mentioned.

And your orator avers that nothing has occurred since the
issuing of said policy of insurance, and the making of such
representations by said general agent, to undeceive your
orator as to his rights and liabilities, until the threatened
action and demand of the said receiver for the amount of your
orator's assessment. as made by him.

And your orator avers that had he, at the time of making
such application, understood, or had he the remotest idea
that his liability might, under any circumstances, exceed the
amount of his said premium note, he would not have entered
into such contract for insurance, but that he did so enter
into such contract relying upon the representations of said
general agent as to the liability of the insured in said com-
pany.

And your orator shows that so understanding, and having
no knowledge of any further liability until such assessment,
his delay to procure relief from such a contract by having
the same set aside should not shut him out·from relief in this
court at this time.

And your orator further shows that said Benjamin H.
Mudge, at the time of making the representations and the
original contract of insurance, and at the time of making the
renewal thereof, was the general soliciting agent of the com-
pany, elected and appointed by the board of directors
thereof, and by them authorized to make such representa-
tions as to the liability of the insured in said company; that
when said application of insurance was taken it was the
intention of said general agent and officers of said company
to bind your orator only to the amount named in said
premium note.   Said general agent and officers never
expected that your orator was liable beyond the premium
note signed by him, and all the insured expected and

intended that the premium note was the limit of their liability. Both your orator and officers of said company, from the time said company was organized to the time said company became insolvent, supposed that the contract entered into, whereby your orator should be liable only to the amount of the premium note, was in accordance with the statute under which said company was organized, and so expected that the premium note signed by your orator was the extent of his liability until the threatened action of said receiver.

Your orator further says that said general agent, before and at the time said application was taken, stated to him that all the members (which numbered nearly one thousand) were first-class, reliable, and responsible persons, and if necessary could be compelled to pay the full amount of their premium notes; that your orator was unable in any way to find out the financial condition of the members of said company, but had to rely upon the statement made by said agent, as it was impossible to find out the liability otherwise. Your orator states the fact to be that a large portion of said members, at the time your orator insured, were uncollectible, having little or no property, and still a larger portion of said members only held that amount of property which is exempt by law from execution.

Your orator further shows that, should the amount of assessment be collected as made by said receiver, your orator, with a certain few, would be compelled to pay the amount and thereby be financially ruined, for the reason that a large portion of said members have very little or no property, and still a larger portion have only that amount of property which is by law exempt from execution.

And your orator further shows that said receiver, unless restrained by the order of this court, will proceed to judgment in the said case at law, to the great damage and loss of your orator."

The bill is supported by the affidavits of Michael Hansel-man, who was its president, and of William A. Mills, who was one of the original corporators of the company, and was its secretary from 1876 to 1882, each of whom swear that it was their understanding that persons who were insured in the company were liable to pay nothing beyond the amount of their premium notes by way of assessment; and they also swear that they believe that all the officers and directors of

the company held to the same opinion; and Mr. Mills says that it was known to the officers and directors of the company that Benjamin H. Mudge, the general soliciting agent, made such statements and representations, and they were never questioned by the officers and directors; that he "has good reason to believe, and does believe, that all persons who were insured in said company so understood and believed." It will thus be seen that each member of the company has equal claims to relief with the complainant, and there is no source from which losses can be met by the receiver other than the premium notes, if any are uncollected.

The questions raised are of the first importance both to the complainant as affecting his liability, and to his associates who have suffered loss, and who look to the liability of the members of the company for indemnity. His right to relief is based exclusively (1) upon his mistake of law, and (2) his mistake of fact. These will not be considered separately. The averment in the bill that the mistake of law was mutual, lends no aid to the equities arising from such mistake, for in any case there must be something that makes it inequitable for the opposite party to the contract to insist upon its enforcement, or equity will not interfere. It is well settled that it is not every mistake of law, although accompanied with injurious results, that will lay the foundation for equitable interference, and an examination of the authorities where relief has been granted or refused, will disclose that each case is based upon its own peculiar circumstances, and they are so unlike that no general rule can be extracted therefrom. A mistake of law is something, however, that operates upon the mind and induces action in reliance upon what the party acting believes, or supposes to be, his legal rights. It is an act done or suffered under a misapprehension of legal rights, and is necessarily based upon his ignorance of what his legal rights are. In order to invoke the equitable powers of a court to be relieved against his misapprehension induced by ignorance, he must be free from negligence as a cause of his mistake, and also in discovering the existence thereof. Diligence in discovering and enforcing a right lost or impaired

by a mistake is as essential as diligence in the discovery of fraud, and promptness in seeking relief therefrom.

Now it is claimed by the complainant that he entered into the contract between himself and the insurance company in ignorance of the provisions of the seventeenth section of the General Insurance Law. He claims that the contract that he believed he was entering into was to this extent and no more, namely : That in consideration of indemnity to the amount named in his policy, against loss of his own property, he agreed to pay, for the indemnity against loss of other parties insuring in the same company, a sum not to exceed $25.50, to be assessed according to the charter and by-laws of the company. But, instead, he has discovered that the law ingrafted upon that contract which he was aware he had made, and which he supposed limited the extent of his liability, the further undertaking on his part, not expressed in his written contract, that in case the company becomes insolvent, and a receiver is appointed, then that he will pay all assessments laid by the receiver for the purpose of paying losses and liabilities of the company, and the services and expenses of the receiver, without limitation, in proportion to the amount of his insurance or interest in the company.

The complainant makes another important allegation in his bill. He says that the fact is that every person insured in said company, including those who suffered losses, expected that they were liable only to the amount of their premium notes, and in no case could it exceed the amount of said premium notes. By demurring the defendant admits this statement to be true. This is a material allegation, and, if true, ought to be an end of the case, because it shows that every member of the company was laboring under a mistake of law which affected his liability, and which it would be most inequitable for any one of them now to insist upon enforcing. This is a mutual company. The question at issue as to the right of the receiver to assess beyond the premium notes affects no one but the members, and these members entered into contract relations with each other upon the express understanding and agreement that they should not be assessed

beyond the amount of their premium notes. There is nothing illegal in such a contract, although the law does provide that in case the company becomes insolvent there might be assessments made beyond and independently of the premium notes to pay such loss. This provision of the law was made for the benefit of the individual members, and the individual members can waive a benefit given by statute. The case is much stronger when, in ignorance of such law, they mutually agree that the premium note shall be the limit of each member's liability.

If the agent had intentionally misrepresented to the complainant the facts in a material point, which induced him to enter into the contract, he would have been entitled to relief. In *Lycoming Fire Ins. Co. v. Woodworth* 83 Penn. St. 223, Mr. Justice Gordon said : " It is true that one insuring in a company, formed on the mutual plan, is bound to inform himself of the rules and regulations of such company. *Mitchell v. Insurance Co.* 51 Penn. St. 402. But it is also true that, as to those outside of it, such a company occupies no other or better position than one organized on the stock plan. As to one dealing for insurance, such a company is bound, as any other, by the representations of its agent in the act of making the contract, for it cannot assume the advantages of his acts, and avoid the disadvantages. The maxim, 'Qui sentit commodum sentire debet et onus,' is said by Justice Sharswood, in *Mundorff v. Wickersham* 63 Penn. St. 87, to embrace a principle which pervades the law in all its branches. It follows that this company could not profit by the fraud of its agent in inducing the plaintiffs to enter into a contract which they would not have entered into had it not been for such fraud, and it does not help the matter that they were thus made members of the company, for such membership arises from, but does not precede, the contract."

Under the allegations of the bill it would operate as a great wrong upon the complainant to extend his liability beyond the amount of the premium note signed by him, which it was expressly agreed should limit the utmost extent of his liability ; and as all of the members understood their contract

in the same way, there is nothing wrong or inequitable in enforcing the contract as made.

I do not feel called upon to determine what would be the liability of complainant under a state of facts different from that made by his bill. I base my opinion entirely upon the facts stated, and by the demurrer admitted to be true. We cannot anticipate that he will be unable to sustain the statements made, by proof, if they are denied by the answer that may be interposed. I think the decree of the court below should be

Reversed, the demurrer overruled, and the record remanded with leave to defendant to plead in twenty days.

SHERWOOD, J. concurred.

COOLEY, C. J. I assent to the conclusion reached by Mr. Justice Champlin in this case, upon the express ground that it stands admitted by the record before us that all the parties who became members of the insurance company in question did so upon the express understanding and agreement that their liability was to be limited to the notes given by them respectively.

CAMPBELL, J. I do not think relief can be granted against a statutory liability.