# STATE OF MICHIGAN

# COURT OF APPEALS

SHAMEE CATWILMAT, LLC,

        Plaintiff-Appellant,

v

SHAMEE DEVELOPMENT COMPANY, LLC,
JITEN D. SHAH, CEREAL CITY
INVESTMENTS, INC, and MICHAEL A. MEAD,

        Defendants-Appellees,

and

ADVANTAGE HOME BUILDERS, INC, and
ADVANTAGE HOUSING, INC,

        Defendants.

UNPUBLISHED
May 11, 2017

No. 330616
Kent Circuit Court
LC No. 13-003206-CK

Before: WILDER, P.J., and BOONSTRA and O'BRIEN, JJ.

PER CURIAM.

In this real estate dispute concerning the collateralized business assets of defendant Shamee Development Company, LLC (Shamee Development), plaintiff, Shamee Catwilmat, LLC, appeals as of right the trial court's order that plaintiff discharge all liens it held against the real or personal property associated with the mobile home park principally at issue in this appeal, Village View. We affirm.

## I. FACTUAL BACKGROUND

Shamee Development used both the real and personal property comprising its three mobile home parks as collateral to secure loans from original plaintiff Fifth Third Bank (the Bank), which is no longer a party to this action after having assigned its rights in this case to plaintiff. The Bank held mortgages and promissory notes secured by the various parcels of real estate on which the mobile home parks were situated. Of particular importance, the parties agree that Village View was not situated on a *single* parcel of land; it was situated on two. The first (Village View Parcel 1), encompassed the majority of the Village View development. The second (Village View Parcel 2), was largely undeveloped but contained one building. Each of

-1-

the Village View parcels was the subject of its own mortgage. Although the legal descriptions of both parcels are given in the metes-and-bounds format, the descriptions are noticeably different upon inspection, and each parcel has its own unique tax identification number.

Defendants Jiten D. Shah (Shah) and Michael A. Mead (Mead) are the sole members of Shamee Development, each holding a 50% membership interest.[1] At some point, Shah and Mead began to disagree about the management of Shamee Development. Unable to reconcile their conflicting viewpoints, they reached a "membership deadlock" that prevented Shamee Development from continuing to service its debt to the Bank and from taking the necessary steps to refinance or renegotiate such debt. After Shamee Development failed to make payments as agreed, the Bank accelerated the debt, including the mortgages, and instituted this action against defendants. The Bank asserted, among others, claims for breach of contract and for judicial foreclosure concerning the subject properties of three mortgages—one related to each of the three mobile home parks—but it failed to list both mortgages associated with Village View. Instead, the complaint listed only the mortgage covering Village View Parcel 2 (i.e., the largely undeveloped parcel).

After plaintiff was substituted as a party in the Bank's stead pursuant to MCR 2.202(B), the trial court entered a money judgment in plaintiff's favor against Shamee Development, Mead, Shah, and Cereal City, jointly and severally, for roughly $2.7 million. Plaintiff filed a motion seeking an order directing foreclosure on the subject properties of each of the three mortgages listed in the Bank's complaint (the three subject properties), which the trial court granted in an order modeled on plaintiff's proposed order. At the parties' stipulation, the sheriff's sale of those subject properties took place on October 29, 2014, at which time plaintiff purchased Village View Parcel 2 for $875,000.

Following the sheriff's sale, the trial court entered the parties' March 23, 2015 stipulated order, which listed the legal descriptions of the three subject properties and, in pertinent part, provided as follows:

### STIPULATED ORDER CONFIRMING SALES, AWARDING ATTORNEY'S FEES AND COSTS AND FOR DISBURSEMENT OF FUNDS

\* \* \*

B.     The sales for all three properties were regular and pursuant to law, and the . . . sale prices are agreed to be adequate. . . .

\* \* \*

---

[1] The remaining defendants, Cereal City Investments, Inc (Cereal City), Advantage Home Builders, Inc, and Advantage Housing, Inc (Advantage Housing), are all business entities associated with Shah and Mead. Advantage Housing was dismissed without prejudice below for nonservice of process.

> G.    The Court is holding $700,000.00 in excess sale proceeds.

Now, therefore,

> **IT IS ORDERED** that the sales and sheriff's deeds resulting from the sales . . . are confirmed to the purchasers as identified herein.

> \* \* \*

> **IT IS FURTHER ORDERED** that the Clerk of the Court is immediately directed to pay $414,000.00 to Plaintiff . . . out of the excess sale proceeds currently held by this Court as full satisfaction of the Judgments owing to Plaintiff which pays in full any indebtedness owing from any of the Defendants to Plaintiff. Upon receipt of these funds, Plaintiff shall immediately file a satisfaction of Judgment in full satisfaction of the August 8, 2014 Judgment and this Judgment. . . .

Consistent with the March 23, 2015 stipulated order, plaintiff subsequently filed satisfactions of the money judgments it had received against defendants. The parties then promptly submitted another stipulated order, stipulating to a proposed disbursement of the remaining sale proceeds and to the termination of the receivership over the mobile home parks at issue.

Two days later, however, plaintiff—having been notified by Shamee Development's attorney that plaintiff had foreclosed upon, and received a sheriff's deed for, only one of the two Village View parcels—filed an emergency motion to temporarily stay the scheduled termination of the receivership. Plaintiff subsequently filed the motion that is principally at issue in this case, its motion for relief from judgments and to reform the sheriff's deed. Plaintiff argued that equity required reformation of the sheriff's deed. Particularly, plaintiff contended that the failure to include Village View Parcel 1 in the various pleadings, stipulations, orders, and the sheriff's deed in this case constituted a mutual mistake—of the parties, the court, and the receiver—that justified reformation via the trial court's equitable powers. Plaintiff also argued that defendants were estopped equitably, judicially, and by laches from arguing that the mistake had not been mutual. Plaintiff further argued that, even if the mistake in question *had* been unilateral, reformation was still warranted because Shah or his attorney knew of the mistake before the judicial foreclosure was complete and, despite such knowledge, failed to correct the obvious belief of plaintiff, the other parties, and the court that Village View was situated on *one* parcel: Village View Parcel 2. Finally, plaintiff posited that reformation of the trial court's earlier judgments and orders was permissible under several subparts of MCR 2.612(C)(1), including for mistake under (C)(1)(a).

In response, Shamee Development acknowledged that "[s]ometime" between August 26, 2014, and October 29, 2014 (i.e., the date of the foreclosure sales), Shah and his attorney had become aware that the Bank "negligently misrepresented that it had attached all mortgages covering the Village View Park to its complaint[.]" In pertinent part, Shamee Development argued (1) that the negligence of the Bank and plaintiff in pursuing this action did not constitute a mutual mistake and, thus, that it did not provide a basis for relief from judgment under MCR 2.612(C)(1)(a), (2) that equitable reformation was inappropriate under the circumstances, (3) that

-3-

the doctrines of judicial estoppel, equitable estoppel, and estoppel by laches were inapplicable, and (4) that plaintiff's equitable theories were barred by the doctrine of unclean hands.

After considering the matter, the trial court issued an opinion and order denying plaintiff's motion for relief from judgments and to reform the sheriff's deed. With regard to mistake as a ground for relief from judgment under MCR 2.612(C)(1)(a), the trial court found that the mistake in this case was unilateral, not mutual, because "neither Defendant Shamee Development nor Defendant Shah shared" plaintiff's "mistaken understanding at the time the foreclosure sale occurred." Because the mistake was unilateral, the trial court decided that relief was unavailable to plaintiff under MCR 2.612(C)(1)(a). After recognizing that it *possessed* broad equitable powers to reform the parties' instruments to match their true intent, the court held that it could not *exercise* such powers under the facts at bar:

> Here, the Court cannot readily discern and carry out the parties' intentions. Plaintiff . . . surely intended to foreclose upon Village View in its entirety and then purchase the whole mobile-home park for a reasonable price. But the defendants fought [plaintiff] almost every step of the way because their financial circumstances were manageable and the properties comprising the receivership estate were worth far more than [plaintiff] seemed willing to pay for them. Although the Court has a great deal of sympathy for [plaintiff] and the utmost respect for their able attorneys, the Court cannot blithely undo a complicated series of orders and judgments that have been years in the making. Equity constitutes strong medicine in the hands of a judge under the appropriate circumstances, but the chancellor's foot cannot justifiably solve the problem that [plaintiff] – with the aid of its predecessor, Fifth Third – created for itself in this case.

Plaintiff filed a motion for reconsideration, which the trial court denied, and plaintiff was subsequently ordered to discharge all liens it held against the real or personal property associated with Village View. This appeal ensued.

## II. ANALYSIS

On appeal, plaintiff argues that the trial court abused its discretion by refusing to grant plaintiff relief from judgment under MCR 2.612(C)(1)(a). In the alternative, plaintiff contends that the trial court erred by refusing to use its equitable powers to reform the sheriff's deed and the related orders, judgments, and stipulations. We disagree in both respects.

## A. RELIEF FROM JUDGMENT

A trial court's decision whether to grant relief from judgment under MCR 2.612(C)(1)(a) is reviewed for an abuse of discretion. *Rental Properties Owners Assoc of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 531; 866 NW2d 817 (2014). A decision constitutes an abuse of discretion if it "results in an outcome falling outside the range of principled outcomes" or is founded upon an error of law. *Ronnisch Construction Group, Inc v Lofts On The Nine, LLC*, 306 Mich App 203, 208; 854 NW2d 744 (2014).

Under MCR 2.612(C)(1)(a), a trial court "may relieve a party or the legal representative of a party from a final judgment, order, or proceeding" on the basis of "[m]istake, inadvertence, surprise, or excusable neglect."  Although a trial court's discretion under this rule is broad and includes the authority to relieve parties of the consequences of both consent judgments, *Wolf v Mahar*, 308 Mich App 120, 128; 862 NW2d 668 (2014), and stipulations, the rule "was not designed to relieve counsel of ill-advised or careless decisions," *Limbach v Oakland Co Bd of Co Rd Comm'rs*, 226 Mich App 389, 393-394; 573 NW2d 336 (1997) (quotation marks and citation omitted).  See also *Farm Bureau Mutual Ins Co Of Mich v Buckallew*, 471 Mich 940 (2004) ("Plaintiff had access to all the necessary information, and its error is not excused by its own carelessness or lack of due diligence."), citing *Lark v Detroit Edison Co*, 99 Mich App 280, 283-284; 297 NW2d 653 (1980) ("We will not equate this lack of due diligence with the mistake or excusable neglect required under the rule for setting aside a judgment.").

As in *Buckallew* and *Lark*, in this case plaintiff had unfettered access to all of the information necessary to avoid its instant predicament; it cannot now complain that defendants were required or otherwise failed to exercise due diligence on its behalf.  It is undisputed that the mortgages and deeds associated with Village View were duly recorded, which placed plaintiff on constructive notice of the Village View parcels and their associated mortgages.  See *Wells Fargo, NA v SBC IV REO, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 328186); slip op at 20 ("Notice, which can be actual or constructive, is whatever is sufficient to direct attention of the purchaser of realty to prior rights or equities of a third party and to enable him to ascertain their nature by inquiry.  Constructive notice involves imputed notice to a person regarding all matters properly of record.") (quotation marks and citation omitted).  As evidenced by plaintiff's inclusion of the legal description for Village View Parcel 2 in at least one proposed order submitted to the trial court, plaintiff also had *actual* notice of that legal description, which was sufficient to enable plaintiff to discern the parcel's physical boundaries.  Had plaintiff exercised due diligence, performing a reasonable inquiry, it would have avoided its current dilemma.  Because any mistake—whether mutual or unilateral—was the result of plaintiff's failure to exercise due diligence, the trial court did not abuse its discretion by denying plaintiff relief from judgment under MCR 2.612(C)(1)(a).

## B.  EQUITABLE REFORMATION

Because it is an equitable remedy, issues concerning reformation are reviewed de novo, *Kaftan v Kaftan*, 300 Mich App 661, 665; 834 NW2d 657 (2013), as is the question of "[w]hether a grant of equitable relief is proper under a given set of facts," *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371; 761 NW2d 353 (2008) (*Johnson Family*).  "[A] stipulation is a type of contract, and contract defenses are available to a party who seeks to avoid a stipulation." *Limbach*, 226 Mich App at 394.

Both mutual and unilateral mistakes can justify contractual reformation under the right circumstances, including reformation of a deed. *Johnson Family*, 281 Mich App at 379-380. However, "[a] high degree of care and caution should be exercised in reforming written instruments affecting title of lands." *Bock v Newkirk*, 251 Mich 447, 449; 232 NW 207 (1930). "It is essential in order to obtain a decree rescinding or reforming a written conveyance, contract, assignment or discharge for mistake, that the facts necessary for the allowance of the remedy shall be proved by clear and convincing evidence," *Woolner v Layne*, 384 Mich 316, 318-319;

181 NW2d 907 (1970), quoting 2 Restatement Contracts, § 511, which is the highest evidentiary standard applicable in civil actions, *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). Evidence is clear and convincing only if it produces "in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established"; in other words, when it is "evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Id*. (quotation marks and citation omitted; alteration in original).

On this record, we discern no error in the trial court's conclusion that plaintiff failed to prove by clear and convincing evidence that a mistake justifying reformation had occurred. On the contrary, plaintiff supported its motion for relief from judgments and to reform the sheriff's deed with very little documentary evidence of the parties' respective intents, primarily offering conjecture about what the parties knew and when they knew it. As the trial court properly determined, the minimal evidence of intent presented by plaintiff was not sufficiently clear, direct, weighty, and convincing to come to a clear conviction, without hesitancy, that there had been a mistake warranting reformation.

In any event, even assuming, arguendo, that the opposite is true—that plaintiff *did* present clear and convincing evidence of the parties' intent—reversal is yet unwarranted because the trial court reached the proper outcome. See *Lewis v Farmers Ins Exch*, 315 Mich App 202, 216; 888 NW2d 916 (2016). Equity will not lend relief to a party for "[c]ulpable ignorance of a material fact," which occurs when the fact should have been discovered through the exercise of "common prudence" but was not. *JW Wells Lumber Co v Menominee River Boom Co*, 203 Mich 14, 38; 168 NW 1011 (1918). See also *Maclem v Bacon*, 57 Mich 334, 342; 24 NW 91 (1885) ("In order to invoke the equitable powers of a court to be relieved against his misapprehension induced by ignorance, he must be free from negligence as a cause of his mistake, and also in discovering the existence thereof."). Similarly, a party bearing the risk of a mistake cannot use that mistake to avoid enforcement of a contract. See *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 30; 331 NW2d 203 (1982) (*Messerly*). A party that "is aware, at the time the contract is made, that [it] has only limited knowledge with respect to the facts to which the mistake relates but treats [its] limited knowledge as sufficient," bears the risk of loss arising out of that mistake. 2 Restatement Contracts, § 154; *Messerly*, 417 Mich at 30 n 12. Put differently, "[i]gnorance is never sufficient to constitute a ground of relief if it appears that the requisite knowledge might have been obtained by reasonable diligence. He who averts knowledge to himself cannot later claim lack of knowledge." *Canpro Investments Ltd v United States*, 130 Fed Cl 320, 342 (2017) (*Canpro*) (quotation marks and citation omitted; alteration in original) (discussing assumption of risk and 2 Restatement Contracts, § 154).[2]

As we have already explained, plaintiff had constructive notice of the mortgages and deeds associated with Village View and had actual notice of Village View Parcel 2's legal description. Despite such notice, plaintiff proceeded on the basis of the limited information

---

[2] Such assumption of risk principles apply to both mutual and unilateral mistakes. See 2 Restatement Contracts, §§ 152 and 154 (mutual); *Canpro*, 130 Fed Cl at 342 n 10 (unilateral).

available to it. There can be no real dispute that the metes-and-bounds legal description of Village View Parcel 2 was insufficient, standing alone without further inquiry, to reasonably inform plaintiff whether Village View actually fell within that parcel's boundaries. Notwithstanding, plaintiff treated its limited knowledge on the subject as sufficient, failing to make further inquiries. By doing so, plaintiff assumed the risk of the mistake at issue here, and it also failed to exercise common prudence, willfully choosing to proceed despite its ignorance of material facts. Hence, plaintiff cannot use its mistake as a ground to avoid its stipulated agreements in this case and the resulting judgments and deeds.[3]

Affirmed. As the prevailing parties, defendants may tax costs pursuant to MCR 7.219.


/s/ Kurtis T. Wilder
/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien

---

[3] Additionally, "error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003). The foreclosure sales in this case resulted from an order based almost entirely on plaintiff's proposed order. Because plaintiff negligently contributed to the purported error in this case, it is unentitled to reversal.