WYSONG ET AL. *v.* AUTOMOBILE UNDERWRITERS, INC.

[No. 26,124. Filed March 13, 1933.]

494

*James M. Ogden,* Attorney-General, and *Joseph W. Hutchinson and Earl B. Stroup,* Deputy Attorneys-General, for appellants.

*Fenton, Steers, Beasley & Klee* and *Thompson, Raab & Stevenson,* for appellee.

HUGHES, J.—This was an action begun in the Marion Superior Court by the appellee against the appellant, seeking to enjoin the appellant from promulgating, enforcing or attempting to enforce a threatened order made by the Insurance Commissioner prohibiting the issuance of contracts of insurance containing provisions against assessment liability and limiting the liability of subscribers, and from preventing the execution of powers of attorney containing provisions as to the limitation of liability, and restraining and enjoining appellant from revoking the authority of appellee to do business in the State of Indiana.

The cause was tried by the court upon a stipulation of facts and the testimony of one witness. A finding was made and judgment of permanent injunction was entered against the Insurance Commissioner.

The reciprocal contract of insurance in question limited the liability of the subscribers to the initial premium paid by them to the attorney in fact. The appellant contends that the provision limiting the liability of subscribers to the initial deposit premium paid by them to appellee, who is attorney in fact for the subscribers of the State Automobile Insurance Association of Indianapolis, Indiana, are prohibited by the terms of the Reciprocal Insurance Act and are also unlawful because they are represented as non-assessable. The appellee contends that the issuance of such policies are lawful.

Appellants rely for reversal of this cause upon the following errors as set out in the assignment of errors, to-wit:

1. The Marion Superior Court erred in overruling

appellant's separate and several demurrer to the complaint.

2. The Marion Superior Court erred in overruling appellant's separate and several motion for new trial herein for the reason that: (a) The decision of the court is not sustained by sufficient evidence. (b) The decision of the court is contrary to law. (c) The finding and decision of the court is not sustained by sufficient evidence and is contrary to law.

The Legislature of Indiana passed a statute in 1919, which became effective May 15, 1919 (Acts 1919, p. 503, §§9308-9321 Burns 1926), which regulates the business of reciprocal insurance. Section 1 of said act provides that the subscribers may make contracts with each other providing indemnity among themselves from any loss that may be insured against; Section 2 provides that such contracts may be executed by attorney duly authorized and acting for such subscribers; Section 3, among other things, provides that such subscribers so contracting among themselves shall file with the Auditor of State (1) a copy of the form of policy contract or agreement under or by which such insurance is to be effected or exchanged; (2) a copy of the form of power of attorney, or other authority of such attorney, under which such insurance is to be effected or exchanged; Section 6 provides that "there shall at all times be maintained as assets a sum in cash or securities amounting to fifty per cent of the net annual deposits, and there shall be maintained in the case of automobile insurance in cash or securities assets sufficient to discharge all liabilities on all outstanding losses arising under policies issued, same to be calculated on the basis of net premiums or deposits as in this section defined and in accordance with the laws of this state relating to similar reserves for companies insuring

similar risks. For the purpose of computing said reserves and assets, net deposits shall be construed to mean the advance payments of subscribers after deducting therefrom the amounts provided in the subscriber's agreement for expenses; if at any time the assets so held . . . or such securities shall be less than required above; or be less than twenty-five thousand dollars, *the subscribers or their attorney for them* shall make up the deficiency within thirty days after notice from the Auditor of State. Section 11 provides that "the penalty for failure or refusal to comply with any or all of the terms and provisions of this act, upon the part of the attorney, shall be the refusal, suspension or revocation of certificate of authority or license by the Auditor of State after due notice and opportunity for hearing has been given such attorney so that he may appear and show cause why such should not be taken." Section 13 provides that "the attorney may insert in any form of policy, prescribed by the law of this state, any provisions or conditions required by the plan of reciprocal or inter-insurance provided that same shall not be inconsistent with or in conflict with the law of this state."

There are two main questions involved in this case: (1) whether a limitation of liability on the part of the subscribers at the State Automobile Insurance Association to the initial deposit and application fee is a valid one; and (2), if so, whether under the terms and provisions of the power of attorney executed by each subscriber at said association and under the policy issued in pursuance thereof the policies of the subscribers are really non-assessable. In order to pass upon these questions we must consider the nature of reciprocal insurance and the foregoing provisions of the Indiana statute with reference thereto.

"By reciprocal or inter-insurance is meant that system of insurance whereby several individuals, partner-

ships, or corporations underwrite each other's risks against loss through an attorney in fact, common to all, under an agreement that each underwriter acts separately and severally and not jointly with any other. The individuals interested appoint an attorney in fact for their particular purpose and business and he takes the place of an insurance company in every particular. The power of attorney is the charter, so to speak, and limits the rights and powers of the attorney in fact, prescribes his duties and provides for his compensation. The power of attorney directs what particular provisions the policies must contain, or must not contain. The attorney in fact is forbidden to make the liabilities of any insurer joint with other inter-insurers and is forbidden to make the liability of inter-insuring underwriters, as such, greater than a specified amount." Central Law Journal, April 22, 1904, p. 323.

The appellee for more than ten years has been attorney in fact for the insurance association subscribers, who, at the institution of this action, numbered more than 100,000 and hold policies aggregating a coverage of several million dollars. Prior to July, 1929, the subscriber's agreement and power of attorney provided that: "My liability shall be fixed and limited to an amount which shall in no event exceed one full additional annual premium deposit during any one year," and the policy or reciprocal contract of insurance issued provided that: "Subscriber's liability shall be fixed and limited to an amount which shall in no event exceed one additional annual premium payment during any one year, and neither our attorney, deputy, or any subscriber, nor any other person, shall have authority to bind or obligate us for any amount in excess of the above fixed limited liability."

In June, 1929, the appellee, for the subscribers, sub-

mitted to the Insurance Commissioner an amended power of attorney which contained the following: "Liability under this policy shall be fixed and limited to the amount of the premium deposit and the application fee provided for in this policy." To this amendment the Insurance Commissioner made no objections but suggested that the amendment be changed (and it was changed) to read as follows: "But the maximum amount to be paid and my liability shall be fixed and limited to the amount of the premium deposit and the application fee provided for herein." Thereafter the policy or reciprocal contract of insurance issued provided that: "The subscriber's liability under this policy shall be fixed and limited to the amount of the premium deposit and application fee provided for in the policy," and printed in the back of the policy in red type were the words, "Non-assessable."

After the new forms of power of attorney and policy had been filed with the Insurance Commissioner, and after more than sixteen thousand of the new form policies were written, on which $648,102 were collected in premium deposits and membership fees, the Insurance Commissioner reversed his ruling and advised appellee that it could no longer issue policies and the subscribers could no longer execute powers of attorney in the amended form theretofore approved by the Commissioner.

There is a limitation under the power of attorney, as set out, which is notice to every subscriber that beyond the premium deposit and application fee the subscribers will not be bound. The liability of any subscriber is determined by the terms of the power of attorney executed by, and the policy issued to, a subscriber. These constitute the contract of each subscriber with all other subscribers. The power of attorney is the controlling factor. The attorney in fact

can not go beyond the powers granted in the power of attorney creating his appointment. He can not bind the subscriber beyond the limitations expressed in the power of attorney. The limitation set out in each subscriber's power of attorney is known to each subscriber and he also knows that the same limitation is set out in every other subscriber's power of attorney. Each subscriber knows that in case the amount he has agreed to pay in and the amount other subscribers have agreed to pay in is not sufficient to pay his loss that there is no further liability on the part of the subscribers to pay additional sums over and above what they have contracted to pay.

The subscribers have the right to contract among themselves and fix the limit of their liability unless there is some law preventing it and we are unable to find any holding that the subscribers have not the right to fix the limit of their liability as among themselves, and as to each other. Reciprocal or inter-insurance is not a statutory entity but only regulated by law. It is by private contract that the relations created among and between the subscribers are fixed and determined. And the policy issued by the attorney in fact and the power of attorney executed by each subscriber determines the rights and liabilities of the subscribers between themselves, providing that said power of attorney and the policy issued do not contravene the law of the state. There must be an attorney in fact for the reason that under the plan of insurance in question all the business is done and transacted by an attorney in fact and an attorney in fact presupposes a power of attorney. When we look to the policy in consideration and the power of attorney, we find both in accordance with the plan of reciprocal insurance prior to the enactment of the reciprocal law in this state in limiting the liability of the subscribers. As between

themselves, the subscribers are liable as their contracts with each other make them liable.

It is held in *Moore* v. *Lichtenberger* (1904), 26 Pa. Sup. Ct. 268, "that under the laws of Pennsylvania a mutual insurance company may, in a proper manner, which involves nothing to deceive present or future policyholders, enter into a contract of insurance which involves a limitation of the liability of the assured to assessment; it may accept a cash payment or note for a specific sum absolutely fixing the amount to be paid whether or not losses occur; or it may accept a premium note liable to assessment, and fixing the limit thereof. A member who has paid up her policy assessment to the full amount agreed upon in the contract is not liable to further assessment." The above statement of the law is also found in *Macklem* v. *Bacon* (1885), 57 Mich. 334, 24 N. W. 91, and *Seamans* v. *Millers Mutual Ins. Co.* (1895), 90 Wis. 490, 63 N. W. 1059.

The limitation of liability as provided in the power of attorney, and in the policy issued, does not tend to deceive present or future policyholders; each subscriber knows the contents of both the power of attorney and the policy issued and, therefore, can not be misled or deceived as to either. Sec. 13 of the statutes specifically provides that: "The attorney may insert in any form of policy prescribed by the law of this state any provision or condition required by the plan of reciprocal or inter-insurance provided that same shall not be inconsistent with or in conflict with the law of this state."

It is the contention of the Attorney-General that the policy limiting their several liabilities to the "deposit premium" as set out in the policy is contrary to the provisions of Section 6 of the Reciprocal Act of 1919. He does not contend, however, that there is any express provision prohibiting the issuance of non-assessable poli-

cies, but in construing Section 6 he maintains that under a proper construction of the section that the members or subscribers can not limit their liability. That part of the section which the Attorney-General relies upon is as follows: "For the purpose of computing said reserves and assets, net deposits shall be construed to mean the advance payments of subscribers after deducting therefrom the amounts provided in the subscriber's agreement for expenses; if, at any time, the assets so held in cash or such securities shall be less than required above, or be less than $25,000, the subscribers or their attorney for them shall make up the deficiency within thirty days after notice from the Auditor of State so to do."

Does this provision impose an assessment upon the subscribers in case the assets so held in cash or such securities shall be less than required or less than twenty-five thousand dollars, or does it merely provide for a certain standard of solvency? As stated in this opinion the plan of reciprocal insurance calls for a limited liability and there is nothing in the statute expressly prohibiting it, and we can not read in the statute a provision that in effect would destroy the very purpose for which it was enacted. It is true that a failure or refusal to maintain the standard of solvency may forfeit the right to do business, but we can not believe that it was the purpose of the legislature to make an assessment upon the subscribers in order to maintain a standard of solvency in view of the purpose for which the statute was passed. If that had been the purpose there certainly would have been some specific provisions in the act as to the basis of an assessment. The statute says: "The subscribers or their attorney *shall* make up the deficiency." In construing a statute all the parts and sections thereof must be taken into consideration. Section 11 of said act,

being Sec. 9318 Burns 1926, provides ". . . the penalty for failure or refusal to comply with any or all of the terms and provisions of this act, upon the part of the attorney, shall be the refusal, suspension or revocation of certificate of authority or license by the Auditor of State, after due notice and opportunity for hearing has been given such attorney, so that he may appear and show cause why such action should not be taken." When we construe this section with Section 6 of the act, and being Section 9313 Burns 1926, what do we find? Section 11 says: "The penalty for *failure* or *refusal* . . . shall by the refusal, suspension or revocation of certificate of authority or license. . . ." If the attorney or subscribers fail to comply with the provisions of the act then their license to do business shall be taken away. This is one condition. The other condition is where there is a refusal to comply with the act, the penalty shall be imposed. So under the act the attorney and subscribers may refuse to "make up the deficiency within thirty days after notice from the Auditor of State," and in this event the penalty shall be invoked, and their right to do business is taken away. It is up to the attorney and subscribers whether or not they desire to make up the deficiency, if there is one, and continue in business, or whether they desire to refuse and go out of business.

The word "shall" in the sentence contained in Section 6, wherein it is said "shall make up the deficiency," should be construed to mean "may" in order to give effect to the evident intent of the legislature in enacting the reciprocal act of insurance. The word "shall" may be given the meaning of the word "may" in order to prevent the defeat of the legislative intent. *Morrison* v. *State, ex rel.*, (1914), 181 Ind. 544, 105 N. E. 113; *State, ex rel.*,

v. *Meeker* (1914), 182 Ind. 240, 105 N. E. 506; *Hudson Tp.* v. *Smith* (1914), 182 Ind. 260, 106 N. E. 359.

If the subscribers or their attorney, in case there is a deficiency, voluntarily desire to make up the deficiency they may do so; but if not, then the state has the right to revoke the right to continue business. Any other construction of the act as to this provision would destroy the important and essential feature of reciprocal insurance—the right of "limited liability." The reciprocal act does not expressly provide that subscribers shall be liable for assessments to keep up the statutory reserve or pay losses, nor does it clearly and by necessary implication follow that such an assessment is intended. The right to make an assessment can not be implied or inferred, but must be expressly granted. *Adams* v. *City of Shelbyville* (1900), 154 Ind. 467, 57 N. E. 114, 49 L. R. A. 797, 77 Am. St. Rep. 484; *Klein* v. *Nugent Gravel Co.* (1904), 162 Ind. 509, 70 N. E. 801; *Bogart* v. *Castar* (1882), 87 Ind. 244; *Wilt et al.* v. *Bueter* (1917), 186 Ind. 98, 111 N. E. 926, 115 N. E. 49. The plan of reciprocal or inter-insurance calls for a limited liability and, in our judgment, it is not in conflict or inconsistent with the law of this state. The limitation of liability, therefore, to the initial deposit and application fee is valid and the policy is non-assessable as between the subscribers.

The next questions presented are whether or not the policy is non-assessable as to third parties, and whether the attorney in fact had power to incur a liability in favor of third parties as against the subscribers.

It has often been decided by the highest courts of the land that where the law requires the agent's authority to be in writing that third partners are bound by the limitations thereof and although they have not actual knowledge of them.

We find in 2 Corpus Juris 565 the following statement of the law: "Where a third party dealing with an agent has knowledge that his authority must necessarily be in writing to bind the principal, it is his duty to ascertain whether the agent has such authority and whether it is in proper form, and where there is written authority, whether it is required or not, and such person has, or is charged with knowledge thereof, it is his duty to ascertain the nature and extent of the authority conferred and whether the agent is acting within its scope. When the authority is by law required to be in writing he is charged with knowledge of that fact and of the limitation upon the agent's power contained in such writing." To the same effect the following cases are cited: 21 Ruling Case Law 910, Mechem on Agency, Vol. 1 (2d ed.), Sec. 707; *Bank & Trust Co.* v. *McGaa* (1924), 48 S. D. 45, 201 N. W. 783; *Davis* v. *Talbott* (1894), 137 Ind. 235, 36 N. E. 1098; *Strong* v. *Ross* (1904), 33 Ind. App. 586, 71 N. E. 918; *Blackwell* v. *Ketcham* (1876), 53 Ind. 184; *Stainback* v. *Read & Co.* (1854), 11 Grat. (Va.) 281, 62 Am. Dec. 648; *Mt. Morris Bank* v. *Gorham* (1897), 169 Mass. 519, 48 N. E. 341. This proposition of law is well settled and it is useless to cite other authorities. We desire, however, to cite the case of *Bent, Receiver,* v. *Underdown* (1901), 156 Ind. 516, 60 N. E. 307, 308. This was an action by a receiver to collect on unpaid stock subscriptions. In the articles of agreement it was provided that only fifteen per cent of each share of stock subscribed should be paid in by the stockholders, and that the provisions of the articles of association limiting the liability of the stockholders to pay less than the par value of the stock subscribed should not be amended, modified, or repealed except by the unanimous consent of all the stockholders. Said articles were filed recorded in the office of the recorder of Wa-

bash County; a duplicate in the office of Secretary of State. The corporation became indebted, a receiver was appointed and he brought the action to recover the remaining eighty-five per cent. The court said: "Where, however, the creditor deals with the corporation with the knowledge of the agreement that only a certain per cent of the par value of each share of stock subscribed is to be paid, he relies only on that amount, and has no equitable right to insist on the collection of any greater sum from the stockholders than the corporation itself could claim as a part of its assets. . . . The public and creditors of the corporation are in no stronger position, under the authorities cited, to collect the eighty-five per cent of the stock remaining unpaid than the corporation itself; for the articles of association, which informed the public of the amount of the capital stock of the corporation, also gave notice that the stockholders were under no obligation to pay more than $15.00 on each share of the stock subscribed, and that said restriction could only be modified, amended, or repealed by the unanimous consent of all the stockholders. The stockholders made this contract with the corporation and the public were advised of the same by the articles of association, which were recorded as required by law in two public offices in this state. As the stockholders have paid all they agreed to pay, the corporation can claim no more. The creditors being fully advised of said contract between the corporation and the stockholders by the public records in the office of the recorder of Wabash County, and the Secretary of State, did not give the corporation credit on the faith of the capital stock being paid in full, but relied upon the part the stockholders agreed to pay. As this has been paid, the creditors can recover no more from the stockholders."

Applying the law, as we find it to be from the fore-

going authorities, to the facts in the instant case we are of the opinion that third parties are held to have had notice of and bound by the terms of the power of attorney executed by the subscribers and on file in the office of the State Auditor, and that the attorney in fact has no authority to create a liability against the subscribers beyond the limitations of the power of attorney.

There is one remaining question that should have some weight in favor of the appellee in this case. The undisputed evidence in the case is that since the enactment of the reciprocal statute in 1919 all of the insurance commissioners have construed and interpreted the act to the effect that there is a right to limit the liability of the subscribers. In the case of *State* v. *Fidelity, etc., Accident Co.* (1923), 79 Ind. App. 377, 135 N. E. 387, 389, where an interpretation by the insurance department of the state for twenty years had been made upon an act relating to certain insurance laws, the court said: "While such construction of a statute will not prevail against its plain meaning nevertheless, as stated by Black in his excellent work on statutory construction, it 'is entitled to great respect, and if the statute is doubtful or ambiguous such practical construction ought to be accepted as in accordance with the true meaning of the law, unless there are very cogent and persuasive reasons for departing from it.' " Black, Interpretation of Laws 221. *The State Board* v. *Holliday* (1898), 150 Ind. 216, 49 N. E. 14, 42 L. R. A. 826. We hold that it is lawful to issue policies of reciprocal automobile insurance containing provisions limiting the liability of subscribers to the initial deposit premium paid by them.

There was no error committed in overruling appellant's separate and several demurrer to the complaint, nor in overruling the motion for a new trial.

Judgment affirmed.
Treanor, J., dissenting.
Roll, J., not participating.