RHODA L. YEATS, Executrix of the Estate of EDWARD C. YEATS, v. BRUCE DODSON and RALPH DODSON, Attorneys in Fact for Subscribers to CASUALTY RECIPROCAL EXCHANGE, and as Representing all of the Subscribers to said Exchange, and CASUALTY RECIPROCAL EXCHANGE, an Unincorporated Association, Appellants. —127 S. W. (2d) 652.

Division One, November 3, 1939.*

*NOTE: Opinion filed at September Term, 1938, April 1, 1939; motion for rehearing and to transfer to Court en Banc filed; motion overruled at May Term, 1939, May 2, 1939; motion to modify, opinion filed; motion overruled; opinion modified on Court's own motion in opinion filed at September Term, 1939, November 3, 1939.

*J. Francis O'Sullivan, Maurice J. O'Sullivan* and *John M. P. Miller* for appellant; *O. H. Stevens* of counsel.

*E. J. Keating* and *Mosman, Rogers & Bell* for respondent.

200

HYDE, C.—This is an action in equity, under Section 5899, Revised Statutes 1929, to collect a $10,000 judgment, with interest and costs, obtained by plaintiff in New Jersey for wrongful death of her husband, who was killed in an automobile collision. Defendants' casualty policy, issued to The Southwest Utility Ice Company of Tulsa, Oklahoma, covered the car involved in the collision. Plaintiff obtained a judgment in the trial court for $12,515.42 and defendants have appealed.

Plaintiff's husband was killed in New Jersey in 1929 by an automobile insured under the Ice Company's policy operated by Charles E. Lahman, a resident of Tulsa, Oklahoma. Plaintiff, as executrix of her husband's estate, obtained a judgment against Lahman in New Jersey in an action in which Lahman personally appeared. Execution issued thereon was returned unsatisfied. Defendants furnished

counsel, and defended at their expense, and were successful in preventing a judgment against the Ice Company. Thereafter, plaintiff commenced suit against Lahman on the New Jersey judgment in the district court of Tulsa County, Oklahoma. While this suit was pending, Lahman went into bankruptcy and in August, 1933, was given a discharge therein, plaintiff's judgment being one of the claims listed in his bankruptcy petition.

Policy No. 79994 issued by defendants, to the Ice Company as a subscriber of the Casualty Reciprocal Exchange, provided insurance "against loss from common law or statutory liability for damages on account of bodily injuries, fatal or non-fatal, accidentally suffered, or alleged to have been suffered, by any person or persons not in the employ of the subscriber, resulting directly from the ownership, use, or maintenance of any motor vehicle, or trailer attached thereto, described in the schedule herein contained." It also covered anyone using an insured Ice Company car with its "expressed or implied consent." It further provided that, in case of suit for damages "the Exchange will at its own cost defend such suit in the name and on behalf of the subscriber or settle same;" and that "the subscriber shall not voluntarily assume any liability nor settle any claim except at his own cost." Before this policy was issued, the Ice Company executed a power of attorney to the managers of the Casualty Reciprocal Exchange.

This document contained the following provisions:

"The offices of Bruce Dodson, Ralph Dodson and Bruce Dodson, Junior, of Kansas City, Missouri, having been selected as a place at which to reciprocally exchange indemnity, such offices being designated Casualty Reciprocal Exchange, we, as a subscriber at said Exchange, appoint said Bruce Dodson, Ralph Dodson and Bruce Dodson, Junior, the survivors or survivor of them, jointly and severally, attorney for us and in our name, place and stead to exchange indemnity with subscribers at said Exchange;

"To make, issue, change, modify, classify, reinsure or cancel contracts therefor containing such terms, clauses, conditions, warranties and agreements, as the attorney shall deem best and to subscribe such contracts; provided, however, that the amount exchanged for us shall in no case exceed the amount hereinafter subscribed by us. . . .

"The intent and purpose of this instrument is to clothe the attorney with the power necessary to enable us, through the attorney, to exchange indemnity with subscribers; Provided, however, that the attorney shall have no power to make us jointly liable with any other subscriber; and every liability of whatever nature which the attorney is authorized to incur for us hereunder is to be in every case several and not joint. There shall be no joint funds. A sep-

arate individual account shall be kept for us by the attorney which account shall be open to our inspection. . . .

"This power of attorney is strictly limited to the use and purposes herein expressed and to no other purpose, and may be terminated at any time by the subscriber or by the attorney, by either giving to the other ten days' notice in writing; and thereupon the attorney shall liquidate our account and return to us our balance."

Subscribers of the Exchange, who had signed similar power of attorney, were residents of twenty-two states in which defendants were authorized to operate. According to the testimony, the procedure followed in exchanging contracts of indemnity was to have the underwriting department, located in Kansas City, approve as to risk. Then the policy was written and signed by the attorney-in-fact. "The subscribers exchange indemnity with each other" and "they appoint an attorney in fact to do that for them." The bookkeeping on these exchanges was done by the accounting department also located at the home office in Kansas City. The Casualty Reciprocal Exchange had a license from the Oklahoma Insurance Board "to transact the business of Employers and Public Liability, Workmens' Compensation and Property Damage, on the Reciprocal plan, in the State of Oklahoma."

So far as the record shows, defendants maintained no office in Oklahoma. They had a salesman who traveled in Oklahoma and when in Tulsa, he stayed at a hotel there. He also traveled for defendants in several other states. While the Ice Company had signed the power of attorney hereinabove referred to on May 15, 1926, apparently their first automobile public liability policy was ordered in March, 1927. Their order for such a policy seems to have been verbally given to defendants' salesman and no written application was signed. The salesmen ordered it by letter mailed from Tulsa to defendants in Kansas City. Likewise, the record shows that Automobile Liability Policy No. 79994, in effect in 1929, covering the Ice Company's Tulsa automobiles, was written in defendants' office in Kansas City upon an order given to defendants' salesman by the secretary of the Ice Company in Tulsa in May. Although the Ice Company policies then in force would not have expired until June 30, 1929, it was decided to make the new policies commence May 31, 1929, so that all of the Ice Company's policies would expire on the same date. This policy (with another policy) was mailed by defendants at Kansas City to the secretary of the Ice Company at Tulsa on June 15, 1929. The first paragraph of this letter of transmittal was, as follows:

"We are enclosing Automobile Public Liability and Property Damage Contract No. 79993 and Automobile Public Liability, Property Damage, Fire and Theft Contract No. 79994 to cover your entire fleet of automobiles at all locations. These are dated effective May 31,

1929, expire May 31, 1930, and replace Contracts Nos. 73910, 78274, 73911, 78275 and 78276.''

The premiums on all of the Company's policies were paid in August, 1929, to the Company's salesman when he made one of his regular trips to Oklahoma. Policy No. 79994 provided that ''the contract period shall begin at noon on the 31st day of May, 1929, and end at noon on the last day of May, 1930, Standard Time, at Subscriber's address.'' This policy was signed ''Bruce Dodson, Attorney-in-Fact'' both at the end of the part designated ''General Agreements'' and at the end of the part designated ''Special Agreements,'' Two endorsements, one dated May 31, 1929, and one dated November 27, 1929, were signed the same way.

This policy contained what is called a ''no action clause'' which is the basis of the defense herein, as follows:

''No action shall lie against the Attorney or any Subscriber at the Exchange, to recover for any loss under this contract unless brought by the Subscriber himself, nor to recover for any loss arising under clauses (A) or (B) of the Special Agreements (covering damage suits for injuries) unless brought by the Subscriber himself to recover for moneys actually paid by him in satisfaction of a judgment after trial of the issue in a suit instituted within the period limited by the statute of limitations.''

It is contended that this clause made the policy, under the law of Oklahoma, a contract of indemnity against loss and not a contract of indemnity against liability. [Citing Bolling v. Asbridge et al., 111 Okla. 66, 238 Pac. 421; Curtis & Gartside Co. v. Aetna Life Insurance Co., 58 Okla. 470, 160 Pac. 465; Maryland Casualty Co. v. Peppard, 53 Okla. 515, 147 Pac. 106.] Since Lahman never paid the judgment or any part of it, and since he went through bankruptcy he can never be made to pay it, defendants contend that he has not and will not suffer any loss therefrom and, therefore, they have never become liable on such a contract of indemnity. On this ground, they argue that they were entitled to a directed verdict. It is conceded that this is true only if the policy is an Oklahoma contract, because if it is a Missouri contract Sections 5898 and 5899, Revised Statutes 1929, apply and make the ''no action clause'' void. [Schott v. Continental Auto Ins. Underwriters, 326 Mo. 92, 31 S. W. (2d) 7; see, also, Lajoie v. Central West Casualty Co., 228 Mo. App. 701, 71 S. W. (2d) 803; Brucker v. Georgia Casualty Co., 326 Mo. 856, 32 S. W. (2d) 1088.] In support of their contention that the policy was an Oklahoma contract, defendants cite Winston-Norris Co. v. King, 119 Okla. 109, 249 Pac. 319; Continental Cas. Co. v. Owen, 38 Okla. 107, 131 Pac. 1084; Pendleton v. Great Southern Life Ins. Co., 135 Okla. 40, 273 Pac. 1007. However, none of these cases involve reciprocal insurance contracts.

Reciprocal insurance is authorized and regulated by our Insurance

Code. [Art. 11, Chap. 37, R. S. 1929.] "A reciprocal or inter-insurance exchange is a group or association of persons cooperating through an attorney in fact for the purpose of insuring themselves and each other. The attorney in fact issues the contracts to and for them, and he is the one who is held responsible for a compliance with the laws of the state so far as they relate to this character of insurance. . . . Under the facts and the law applicable to them, it is clear that a reciprocal or inter-insurance exchange is something more than a partnership and something less than an insurance corporation, and falls within the classification of unincorporated companies." [In re Minnesota Ins. Underwriters, 36 Fed. (2d) 371; see, also, Wysong v. Automobile Underwriters, 204 Ind. 493, 184 N. E. 783, 94 A. L. R. 826; Casualty Reciprocal Exchange v. Bounds (Ark.), 88 S. W. (2d) 836; note 94 A. L. R. 836; 53 C. J. 547.] In the Wysong case it is said that "there must be an attorney in fact for the reason that under the plan of insurance in question all business is done and transacted by an attorney in fact." It is thus apparent from the nature of this kind of insurance and from the evidence herein, as to the actual procedure followed, that the contracts of indemnity between subscribers were exchanged for them and made between them by their attorneys in fact. Where did the attorney in fact make the contract herein involved? Defendants argue that this contract must be held to be an Oklahoma contract because Section 10452, Chapter 51, Article 1 of the Oklahoma statutes of 1931, provides that "all contracts of insurance on property, lives and interests in this State shall be deemed to be made therein." A similar statute of Mississippi was held, by the Supreme Court of that State, to make a contract, actually made in Tennessee, a Mississippi contract; but this ruling was reversed by the United States Supreme Court. [Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 292 U. S. 143, 54 Sup. Ct. 634, 78 L. Ed. 1178.] The Supreme Court held that such a statute could have no extraterritorial effect. In so holding, the Supreme Court said:

"The Mississippi statutes, so construed, deprive the appellant of due process of law. A state may limit or prohibit the making of certain contracts within its own territory (Hooper v. California, 155 U. S. 648, 15 Sup. Ct. 207, 39 L. Ed. 297; Orient Insurance Co. v. Daggs, 172 U. S. 557, 565, 566, 19 Sup. Ct. 281, 43 L. Ed. 552; New York Life Insurance Co. v. Cravens, 178 U. S. 389, 398, 399, 20 Sup. Ct. 962, 44 L. Ed. 1116); but it cannot extend the effect of its laws beyond its borders so as to destroy or impair the right of citizens of other states to make a contract not operative within its jurisdiction, and lawful where made. [New York Life Ins. Co. v. Head, 234 U. S. 149, 34 Sup. Ct. 879, 58 L. Ed. 1259; Aetna Life Ins. Co. v. Dunken, 266 U. S. 389, 399, 45 Sup. Ct. 129, 69 L. Ed. 342.]"

The distinction between what a state may prohibit, or what conditions it may impose to authorize business to be transacted within its borders, and what it may declare to be the result of transactions is also pointed out by Justice HOLMES in Modern Woodman v. Mixer, 267 U. S. 544, 45 Sup. Ct. 389, 69 L. Ed. 783. [See, also, 54 A. L. R. 515 note; Allgeyer v. Louisiana, 165 U. S. 578, 17 Sup. Ct. 427, 41 L. Ed. 832; New York Life Ins. Co. v. Dodge, 246 U. S. 357, 38 Sup. Ct. 337, 62 L. Ed. 772; Lewelling v. Manufacturing Wood Workers Underwriters (Ark.), 215 S. W. 258.] Oklahoma has neither prohibited the making of contracts of indemnity against liability nor required that every policy of automobile public liability, issued to Oklahoma citizens, shall contain a "no action" clause. Missouri has prohibited the "no action clause," and plaintiff is seeking to enforce rights, given by a Missouri statute, in a Missouri court.

It seems to have been the clear intention that the policy in question should go into effect when it was executed by the Attorney-in-Fact in Kansas City, on May 31, 1929. Its validity was not made to depend upon delivery or payment of premium. There are no such conditions to so limit its effective date as in Cravens v. New York Life Ins. Co., 148 Mo. 583, 50 S. W. 519, and similar cases. This policy was not even sent by mail to the insured Ice Company until June 15, 1929, more than two weeks after it became effective, by its specific terms. The letter of transmittal itself stated that the policy was effective May 31, 1929. It is true that there was an endorsement which the Ice Company was requested to sign and return. However, no condition was anywhere stated preventing the policy from becoming effective until it was signed. Moreover, according to the policy itself and the letter, in which the endorsement was sent, the policy was in effect before this endorsement was ever sent to the Ice Company. Furthermore, the endorsement only stated that the policy did not cover any trucks, while the policy itself described the automobiles covered, in detail, and did not describe any trucks. It certainly made no change in the insurance of the car involved herein which was specifically described.

Our conclusion is that there are at least four reasons why the policy in this case must be held to be a Missouri contract.

■ First: The power of attorney specifically designated the offices described, in Kansas City, Missouri, as the place at which the Ice Company's insurance contracts were to be made. Parties may in good faith (not to evade the law of the actual place of contract) agree that the law of a certain state shall govern the contract where some element of the contract is properly referable to that state; so certainly they could lawfully designate the place where their agent would be authorized to make their contracts with citizens of other states. [Hansen v. Duvall, 333 Mo. 59, 62 S. W. (2d) 732, and cases cited; see also New York Life Ins. Co. v. Head, 234 U. S. 149, 34

Sup. Ct. 879, 58 L. Ed. 1259; 12 C. J. 451, sec. 32; 11 Am. Jur. 453, sec. 153.]

Second: The attorneys in fact were specifically authorized to make insurance contracts for the Ice Company at the offices designated in Kansas City, Missouri, and were not authorized to make them anywhere else. "The attorney in fact cannot go beyond the powers granted in the power of attorney creating his appointment." [Wysong v. Automobile Underwriters, 204 Ind. 493, 184 N. E. 783, 94 A. L. R. 826; 2 Am. Jur. 32, sec. 31; 2 C. J. S. 1223-1225, sec. 98; see also American Law Institute Restatement of Conflict of Laws, secs. 328-330.]

Third: The policy became finally effective at Kansas City, Missouri, because the last act necessary to a completed contract was to be performed by the attorneys in fact, acting on behalf of the Ice Company and the other subscribers, to determine for them the kind of contract to be made and to make it for them. [Daggett v. Kansas City Structural Steel Co., 334 Mo. 207, 65 S. W. (2d) 1036; Illinois Fuel Co. v. Mobile & Ohio Railroad Co., 319 Mo. 899, 8 S. W. (2d) 834, certiorari denied 278 U. S. 640, 49 Sup. Ct. 34, 75 L. Ed. 555; Pickett v. Equitable Life Assurance Society (Mo. App.), 27 S. W. (2d) 452; Fields v. Equitable Life Assurance Society (Mo. App.), 118 S. W. (2d) 521; 11 Am. Jur. 391-393, sec. 107.]

Fourth: In any event the policy became finally effective at Kansas City, Missouri upon delivery, if that was necessary, by posting it in the United States mail there. [American Law Institute Restatement of Conflict of Laws, sec. 317; 11 Am. Jur. 393, sec. 108; 63 L. R. A. 837 note.]

Defendants further contend that plaintiff could not maintain this action without first obtaining a Missouri judgment on her New Jersey judgment. Just how she could have done so is not explained, but, since Lahman was at all times a resident of Oklahoma and, so far as the record shows, was never in Missouri it would seem that it was impossible to meet such a requirement. It certainly became impossible to do so anywhere after he had obtained a discharge from it in bankruptcy. The validity of plaintiff's judgment was admitted by listing it as a liquidated claim against Lahman in his bankruptcy schedules. In such a situation, equity only requires its suitor to show that he has completely exhausted his legal remedies. [Bewes, Inc., v. Buster, 341 Mo. 378, 108 S. W. (2d) 66; Buckley v. Maupin, 344 Mo. 193, 125 S. W. (2d) 820.] It conclusively appears here that plaintiff did so before seeking equitable relief. Defendants also assign error in excluding certain letters offered in evidence but, since these are in the record, we have considered them under our rules of review in equity and find that they show nothing that could change the result. The judgment is affirmed. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.

### ON MOTION TO MODIFY OPINION.

### 138 S. W. (2d) 1020.

HYDE, C.—A motion to modify the opinion herein having been filed, we ordered the mandate in this case withheld in order to retain jurisdiction and pass upon this motion. The ground stated is that our opinion could be construed to hold that all reciprocal insurance contracts are contracts of the state of the domicile of the attorney-in-fact and that a Missouri reciprocal insurance company cannot write a contract which would be a contract of any other state. No such ruling was made or intended. In order that no such construction can be placed on the opinion, we modify our opinion of our own motion (overruling the motion to modify) by withdrawing therefrom Paragraph Second of our conclusions, namely: ''The attorneys-in-fact were specifically authorized to make insurance contracts for the Ice Company at the offices designated in Kansas City, Missouri, and were not authorized to make them anywhere else. 'The attorney-in-fact cannot go beyond the powers granted in the power of attorney creating his appointment.' '' (With citations.) [Yeats v. Dodson, 345 Mo. 196, 127 S. W. (2d) 652, l. c. 656.] What we held was that, *under the facts of this case* (fully stated in the opinion), the contract involved was a Missouri contract. As our opinion stated, we recognize that there is an essential distinction between *what conditions a state may impose to authorize business to be transacted within its borders* and what it may declare to be the result of transactions actually made entirely elsewhere.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.