In the Matter of **INTERNATIONAL UN-DERWRITERS, Inc., a corporation, Alleged Bankrupt.**
**No. 22021.**

United States District Court
W. D. Missouri, W. D.
Dec. 30, 1957.

John P. Haley, Jr., Kansas City, Mo., for alleged bankrupt.

Reeder, Gisler, Griffin & Dysart, Kansas City, Mo., for petitioner.

R. JASPER SMITH, District Judge.

An involuntary petition in bankruptcy was filed against International Underwriters, Inc. on December 17, 1956. Within the required time, the alleged bankrupt answered the petition, alleging that it was an insurance corporation within the meaning of Section 22, Chapter 3, Title 11 U.S.C.A., and therefore excepted from the operation of the Bankruptcy Act. This allegation, of course, raises a plea to the jurisdiction of the Court.

■ The rule is well established that when the jurisdiction of a court of bankruptcy is challenged on the ground that the alleged bankrupt belongs to a class excepted from operation of the Bankruptcy Act, Title 11 U.S.C.A., the court has jurisdiction at least to determine its jurisdiction. Denver First National Bank v. Klug, 186 U.S. 202, 22 S.Ct. 899, 46 L.Ed. 1127; Smith v. Central Trust Co., 4 Cir., 139 F.2d 733. Within this limited area, the sole issue is whether or not this Court as a court of bankruptcy has jurisdiction to adjudicate as an involuntary bankrupt a corporation organized under the General and Business Corporation Act of Missouri, Chapter 351, V.A.M.S., which is empowered to act, among other things, and at the time of the commission of the alleged acts of bankruptcy was acting, principally as the attorney in fact for International Indemnity Exchange, a reciprocal insurance exchange organized pursuant to Missouri law, Sections 375.790 to 375.920, incl., V.A.M.S. The issue is dependent upon the character of International Underwriters, Inc., alleged bankrupt. To decide that it is an insurance corporation is to deprive the Court of jurisdiction.

Both counsel for petitioning creditor and alleged bankrupt concede that their search, though diligent and thorough, has failed to disclose any reported case which specifically defines the status of an attorney in fact for a reciprocal insurance exchange within the definition of insurance corporation as excepted by Section 22(b), supra, of the Bankruptcy Act.

Under the provisions of Section 22(b), "any moneyed, business, or commercial corporation, except a building and loan association, a municipal, railroad, insurance, or banking corporation, owing debts to the amount of $1,000 or over, may be adjudged an involuntary bankrupt * * *" In determining the susceptibility of a corporation to bankruptcy regard must be given to several factors. There is respectable authority for the proposition that the nature and character of a corporation is dependent upon the character of its charter powers as evidenced by its articles of association and the laws of its creation. Matter of Union Guarantee & Mortgage Co., 2 Cir., 75 F.2d 984; Gamble v. Daniel, 8 Cir., 39 F.2d 447; Matter of Pacific States Savings & Loan Co., D.C., 27 F.Supp. 1009. Other authority would note the business the corporation actually transacts, rather than the business it is empowered by charter to do. In re Supreme Lodge of Masons Annuity, D.C., 286 F. 180; In re Roumanian Workers Educational Ass'n of America, 6 Cir., 108 F.2d 782; In re Wisconsin Co-op Milk Pool, D.C., 35 F. Supp. 787.

■ The better rule is that, in determining the amenability of a corporation to bankruptcy, the Court considers the classification of the corporation by the state of its charter, the powers conferred upon it, and the character and extent of its principal activities. Missco Homestead Ass'n, Inc., v. United States, 8 Cir., 185 F.2d 280, 22 A.L.R.2d 1015; In re Prudence Co., 2 Cir., 79 F.2d 77; In re Fidelity Assurance Ass'n, D.C., 42 F.Supp. 973. These tests of the nature and character of a corporation are to be applied as of the date of the commission

of the alleged act or acts of bankruptcy. Swift v. Mobley, 5 Cir., 28 F.2d 610; Smith v. Brownsville State Bank of Brownsville, Minn., 8 Cir., 15 F.2d 792; In re New York & Westchester Water Co., D.C., 98 F. 711.

There is no question but that International Indemnity Exchange is in the insurance business, and for purposes of the bankruptcy laws must be considered an "insurance corporation". In re Lloyds of Texas, D.C., 43 F.2d 383; In re Manufacturing Lumbermen's Underwriters, D.C., 46 F.Supp. 343. However, I am required now to examine its attorney in fact, apply the tests formulated to determine its character, and decide whether it also should be considered an "insurance corporation" within the meaning of Section 22(b), supra.

Petitioning creditor contends that International Underwriters, Inc., is not an insurance corporation, and thus not excepted from bankruptcy for the reasons that it issues no policies, collects no premiums, is not under the regulation of the State Insurance Department as an insurance company, and does not hold itself out to the public as an insurance company. Petitioner further argues that the attorney in fact, International Underwriters, Inc., is but the agent for its principal, International Indemnity Exchange.

The contention that the attorney in fact issues no policies is met by reference to alleged bankrupt's automobile policy containing the reciprocal provisions effecting the exchange of insurance between subscribers, and which is signed by the president of the attorney in fact. It reads in part:

> "Our Attorney is authorized to make, modify, and cancel policies exchanging insurance between subscribers and this exchange, containing such terms and agreements as our Attorney shall deem necessary or expedient to effect such exchange of insurance;"

Thus the attorney in fact executes, modifies and cancels the insurance. Furthermore, it is obligated to draft the provisions and formulate the policy so that it achieves reciprocal insurance. The quoted portion of the policy continues by authorizing the attorney in fact,

> "to receive, collect, and sue for, in his own name or otherwise, all moneys due or to become due to our Attorney or to this exchange in any manner arising from or growing out of the exchange of insurance hereby provided for; to waive and receive all notices and proofs of loss; to adjust and settle all losses and claims under policies of insurance and reinsurance; to perform and waive all agreements and stipulations of any such policies; to institute and defend proceedings at law and in equity; to settle any controversy or dispute arising under any such policy of insurance; to do all things required to effect compliance with the laws of any state in which this exchange shall operate and to appoint and authorize the statutory officer of such state to accept service of process in any action, suit or proceeding against the exchange; to accept service and appear in any litigation and to prosecute, defend or compromise the same; to borrow money on behalf and in the name of this exchange; to hypothecate and pledge any and all assets and property of this exchange as security for the repayment of any moneys borrowed or to sell or otherwise dispose of any part or all of the assets and property of this exchange necessary to meet the obligations of this exchange; to perform every act necessary to carry out the purpose of this policy, with full power of substitution and revocation; and to appoint agents and representatives to perform each and all of these actions."

It is readily seen that the attorney in fact is authorized to collect premiums, contrary to contention of petitioner, and is empowered to perform and function in many other areas of insurance manage-

ment. In the performance of these responsibilities the attorney in fact has not escaped regulation by the State Insurance Department. Judge Hyde, speaking for the Supreme Court of Missouri, in Yeats v. Dodson, 345 Mo. 196, 127 S.W. 2d 652, 655, one of the few Missouri decisions dealing with reciprocal insurance exchanges and their attorneys in fact, said:

"Reciprocal insurance is authorized and regulated by our Insurance Code, Art. 11, Chap. 37, Section 5966 et seq., R.S.1929, Mo.St.Ann., § 5966 et seq., p. 4547 et seq. 'A reciprocal or interinsurance exchange is a group or association of persons cooperating through an attorney in fact for the purpose of insuring themselves and each other. The attorney in fact issues the contracts to and for them. And he is the one who is held responsible for a compliance with the laws of the state so far as they relate to this character of insurance. * * *' "

That portion of the insurance code of which Judge Hyde speaks and which regulates reciprocal insurance is now found in Sections 375.790 through 375.920, V.A.M.S. It authorizes reciprocal or interinsurance contracts, permits them to be executed by an attorney in fact, requires the attorney in fact to file with the Superintendent of Insurance certain instruments, records and statements, requires maintenance of reserve and guaranty funds, and provides for procurement of certificates of authority, payment of license fees and penalties to be imposed upon the attorney in fact for not complying with the prescribed regulations. Furthermore, Section 375.560, V.A.M.S., authorizes the Superintendent to enjoin from doing business or dissolve, under certain circumstances, any company functioning under the provisions relative to reciprocal insurance, Sections 375.790 through 375.920, V.A.M.S.

Even a cursory perusal of these statutes reveals how essential the existence of an attorney in fact is to reciprocal insurance. "Such contracts may be executed *by an attorney in fact*". . . Section 375.800; "such subscribers so contracting among themselves shall, *through their attorney*, file * * *". . . Section 375.810; "*the attorney* shall file with the superintendent of insurance * * *". . . Section 375.820; "there shall be filed with the superintendent of insurance of this state, *by such attorney*, * * *". . . Section 375.830. These are but a few of the references made to attorneys in fact. They are sufficient nevertheless to impress one of the responsibility possessed by an attorney in fact to the scheme of reciprocal insurance. It is futile to contend in the face of these provisions that International Underwriters, Inc., is not regulated by the State.

█ Petitioner urges that the attorney in fact fails to possess two features essential for exception under the Bankruptcy Act. First, it was organized and incorporated under the General and Business Corporation Law of Missouri, Chapter 351, V.A.M.S., rather than under Chapter 379, V.A.M.S., relating to organization of insurance companies. Petitioner reasons that if International Underwriters, Inc., claims it is an insurance corporation, then it has violated the provisions of Section 351.020, V.A.M.S., by incorporating as a general and business corporation. If, on the other hand, it is found to be a general and business corporation, it is not empowered to engage in the insurance business, and its acts therefore are ultra vires. Note the language of Section 375.800:

"Such contracts may be executed by an attorney in fact herein designated attorney, duly authorized and acting for such subscribers *and such attorney may be a corporation*."

If the italicized language is given meaning at all, it must be construed as creating an exception to the general language contained in Chapters 351 and 379. It permits a general and business corporation to be an attorney in fact for subscribers to a reciprocal exchange. It empowers it to perform the office of attorney

in fact. If its office is regarded as that of an insurance corporation, then the acts of the attorney in fact, by virtue of this provision, are not ultra vires. The provision must be construed to authorize expressly engagement in the insurance business of a corporation such as International Underwriters, Inc., although it was not organized under Chapter 379, supra.

Second, petitioner, asserts that the attorney in fact is not an insurer because it runs no risk of being required to pay a beneficiary or insured a larger sum of money than the amount paid in by that person. Concededly, risk is an essential factor of the insurance business, and in the absence of risk imposed upon an entity, regardless of the other insurance-like functions it performs, it is not an insurer.

The second paragraph of the reciprocal provisions contained in the policy is as follows:

"Our Attorney shall have no power to make any Subscriber jointly liable with any other Subscriber; the maximum liability assumed by the Named Subscriber shall be the subscribership fee and the premium stated in this policy."

This provision limits the liability of the subscriber to the extent of the agreement between him and the attorney in fact, and is a valid limitation of liability. Wysong v. Automobile Underwriters, 204 Ind. 493, 184 N.E. 783, 94 A.L.R. 826; 94 A.L.R. 847; 141 A.L.R. 775. The attorney is precluded from assessing the subscriber an additional premium should the claims for losses exceed the funds available for payment of losses. Sections 375.840 and 375.850 require the maintenance of a reserve and guaranty fund for the protection of insureds. Section 375.-860 provides:

"If at any time the amounts on hand are less than the requirements of sections 375.840 and 375.850, the *subscribers or their attorney* for

them shall make up the deficiency." (Emphasis mine.)

According to this, a deficiency in the reserve and guaranty funds must be made up by the subscribers or their attorney in fact. Thus, both the subscriber and their attorney in fact assume the risk of paying claims. And since, because of the limitation of liability, no right of action exists against the subscriber, the provisions of this section must be exercised if at all against the attorney in fact. Clearly, under these circumstances, risk is assumed under the Missouri law.

■ In final analysis, Missouri statutes and Missouri interpretations determine the status of attorneys in fact for reciprocal or interinsurance exchanges. Note Judge Hyde's further comments in Yeats v. Dodson, supra:

" 'Under the facts and law applicable to them, it is clear that a reciprocal or interinsurance exchange is something more than a partnership and something less than an insurance corporation, and falls within the classification of unincorporated companies.' In re Minnesota Insurance Underwriters, D.C., 36 F.2d 371, 372; see also Wysong v. Automobile Underwriters, 204 Ind. 493, 184 N.E. 783, 94 A.L.R. 826; Casualty Reciprocal Exchange of Kansas City, Mo. v. Bounds, 191 Ark. 934, 88 S.W.2d 836; 53 C.J. 547. In the Wysong case it is said that 'there must be an attorney in fact for the reason that under the plan of insurance in question all the business is done and transacted by an attorney in fact.' "

The Wysong case, cited with approval and adopted as Missouri law, demonstrates the indispensibility of an attorney in fact within the plan of reciprocal insurance. The opinion of the Indiana court, in addition to that portion quoted in Yeats, amplifies this indispensibility [204 Ind. 493, 184 N.E. 785]:

"The individuals interested appoint an attorney in fact for their

particular purpose and business and he takes the place of an insurance company in every particular."

Judge Otis, in In re Manufacturing Lumbermen's Underwriters, D.C., 18 F.Supp. 114, 117, discussed the nature and character of reciprocal insurance, the subscribers and the attorney in fact.

"(The powers of the attorney in fact) are set out in a written power of attorney executed, not by the Manufacturing Lumbermen's Underwriters as a separate entity, but by each subscriber. The attorney in fact has no powers except such as are conferred upon him by the power of attorney. * * * A study of the power of attorney discloses at once that Manufacturing Lumbermen's Underwriters is not the principal who has appointed an attorney in fact. Each subscriber of Manufacturing Lumbermen's Underwriters has appointed Rankin-Benedict Underwriters Company as his attorney in fact. No power of attorney has been jointly executed by all of the subscribers. * * *

* * * * * *

" * * * how can it be argued that (an attorney in fact) derives any authority to file a petition in bankruptcy from a dozen or a hundred or a thousand such separate powers of attorney, not indeed upon behalf of any one of its principals or all of its principals separately, but on behalf of a vague and shadowy entity which is not its principal at all and which has authorized it to do nothing.

* * * * * *

" * * * while we think each subscriber is engaged in the business of insurance *and while we think the attorney in fact certainly is engaged in the insurance business,* we do not think the association, as an entity is so engaged. Moreover, *if it should be said (and it might well be said) that the attorney in fact is the 'pulsating heart' of this reciprocal exchange, it is the reality and the rest is but a mask put on,* then also it must be said that the attorney in fact has filed no petition here for and on its own behalf." (Emphasis mine.)

Judge Otis had no hesitancy in determining the attorney in fact to be in the insurance business.

Petitioner would have me hold that the attorney in fact is a mere agent or broker. I cannot share this view as it is determined by Missouri law. American Jurisprudence, Vol. 29, Section 17, demonstrates the different approaches in different states:

"As a general rule, attorneys in fact who represent the subscribers to or members of a reciprocal insurance exchange are regarded as insurance agents. There is also authority to the effect that an attorney in fact for the members of a reciprocal insurance exchange acts as a broker to procure insurance for those persons who appoint him as their attorney in fact pursuant to the plan of such an organization so as to render him liable for failure to exercise reasonable diligence in procuring a policy after application and appointment as attorney. *In several jurisdictions, or under particular statutes, however, such an attorney in fact is himself regarded as the insurer.*" (Emphasis mine.)

One of the cases cited in support of this italicized sentence is Judge Otis' In re Manufacturing Lumbermen's Underwriters, supra.

In this connection, it is interesting to note that the Superintendent of Insurance has proceeded against International Indemnity Exchange and International Underwriters, Inc. in the Cole County Circuit Court and secured a restraining order enjoining the Exchange from further transactions of business, and International Underwriters, Inc., from further acting as attorney in fact. Presumably

he interprets the Missouri statute as requiring him to enjoin both if he was to halt the transaction of business.

This gives point to the conclusion of inseparability of the Exchange and its attorney in fact. It emphasizes the reality of the attorney in fact as the actual insurer. To eliminate the existence of one deals a death blow to the other. To dissolve one dispenses with the other. As stated in Yeats, there *must* be an attorney in fact for the reason that *all* the business is done and transacted by the attorney in fact. Under the reciprocal insurance system the attorney in fact is always in the front.

It cannot be contradicted that among the corporate powers of International Underwriters, Inc. was the authority to act as attorney in fact for any persons, partnerships, and corporations in the exchange of reciprocal or interinsurance contracts. Furthermore, it is clear that for the six months preceding the filing of the involuntary petition International Underwriters, Inc. was functioning to the extent of ninety per cent of its activity as attorney in fact for the Exchange. This certainly constitutes its principal or chief activity. And it is upon this principal pursuit that depends its amenability to involuntary bankruptcy. In re Dairy Marketing Ass'n of Ft. Wayne, D.C., 8 F.2d 626.

To say that this attorney in fact is not engaged in the insurance business is to completely ignore the efficacy, intention and implications of the statutes of Missouri regulating reciprocal insurance, the reciprocal provisions themselves contained in each insurance policy, the charter powers conferred upon the attorney in fact, its principal activities, and lastly its classification by the State itself.

I can arrive at no other reasonable conclusion than that International Underwriters, Inc. is an "insurance corporation" for the purposes of the Bankruptcy Act, and falls within the exception provided in Section 22(b), supra.

The involuntary proceeding in bankruptcy cannot be maintained and the petition is dismissed. It is so ordered.